**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Raymond P. Moore**

Civil Action No. 13-cv-03459-RM

BARBARA NAEVE,

      Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of the Social Security Administration,

      Defendant.

---

## ORDER

---

    This matter is before the Court on Plaintiff Barbara Naeve's ("Plaintiff") request for judicial review pursuant to 42 U.S.C. § 405(g). (ECF No. 1.) Plaintiff challenges the final decision of Defendant Carolyn W. Colvin, Acting Commissioner of the Social Security Administration, by which she denied Plaintiff's applications for disability insurance benefits ("DIB") under Title II of the Social Security Act ("Act"). An Administrative Law Judge ("ALJ") ruled Plaintiff was not disabled within the meaning of the Act and therefore not entitled to DIB.

    Defendant provided the Court with the administrative record. (ECF Nos. 10; 10-1; 10-2; 10-3; 10-4; 10-5; 10-6; 10-7; 10-8; 10-9; 10-10; 10-11; 10-12; 10-13; 10-14; 10-15; 10-16.) The parties have fully briefed the matter and it is ripe for adjudication. (ECF Nos. 15; 16; 19.)

    For the reasons set forth below, the Court vacates Defendant's denial of Plaintiff's DIB application and remands for further proceedings consistent with this Order.

## I.   BACKGROUND[1]

Plaintiff applied for DIB in July 2010, alleging she was disabled as of May 31, 2007, due to the following conditions that limit her ability to work:  right arm injury and complex regional pain syndrome ("CRPS"), and depression.  (Admin. R. ("Tr.") 84, 91, 185-93.)  After Plaintiff's application was initially denied, Plaintiff requested a hearing before an ALJ.  (Tr. 106-08, 110-11.)  The ALJ denied Plaintiff's application.  (Tr. 8-30.)  Plaintiff requested review of the ALJ's decision and, in November 2013, the Appeals Council denied such review.  (Tr. 1-7, 39.)  Plaintiff timely requested judicial review before the Court.

### A.   Background and Relevant Medical Evidence

Plaintiff was born in 1961.  (Tr. 49.)  Plaintiff completed eleventh grade.  (Tr. 51.)  Plaintiff's past relevant work history, as referenced in the Dictionary of Occupational Titles, includes:  administrative clerk, payroll clerk, and accounting clerk/bookkeeper.  (Tr. 71-72.)

Plaintiff claims she became disabled on May 31, 2007 due to a combination of physical and mental health impairments.  (Tr. 84, 91, 185-93.)

#### 1.   Physical Impairments

In February 2007, Plaintiff experienced pain in her right fingers and wrist, which was not resolved with splinting, stretching, or rest.  (Tr. 1009.)  In April 2007, Plaintiff filed a workers' compensation claim based on her right arm impairment.  (Tr. 1009.)  Plaintiff was diagnosed with a tendon-related impairment of the right wrist which was corrected with surgery in August 2007.  (Tr. 407-10.)  Plaintiff's physician cleared her to return to work in December 2007 on modified duty.  (Tr. 465.)

---

[1] The Court notes that Plaintiff filed a prior application for disability.  Neither party addresses Plaintiff's prior disability application and thus, neither will the Court.

In January 2008, Plaintiff sought additional treatment for her right wrist pain and paresthesia.  (Tr. 705-09.)  Plaintiff underwent additional treatment and surgery.  (Tr. 613-19.)

In February 2009, Plaintiff was diagnosed with CRPS type II.  (Tr. 610-12, 739-43.) Plaintiff reported that pain block injections, medication, and therapeutic treatment was either ineffective or caused intolerable side effects.  (Tr. 697-703, 733, 1009.)  Between 2009 and 2011, Plaintiff continued to complain of right arm pain which did not respond to treatment.  (Tr. 756-808, 872, 1031-35, 1046-56.)

In March 2009, Douglas Hemler, M.D., examined Plaintiff and assigned Plaintiff a 15 percent whole person impairment rating based on her hypersensitivity and functional use of her non-dominant hand and her behavioral reaction to that impairment.  (Tr. 743.)

In December 2010, state-agency consultant Anthony LoGalbo, M.D., a physician, opined that Plaintiff could lift and carry 20 pounds occasionally and 10 pounds frequently, mainly using the left arm and "using right [arm] to assist and stabilize; occasionally lift, push, pull, reach, handle, and finger with her right arm but with no repetitive use of the right arm.  (Tr. 93-95.)

In December 2010, Edwin Healey, M.D. a physician, opined that Plaintiff was currently unable to work due to her "chronic pain and psychological symptoms and sleep disorder."  (Tr. 982-97.)

In July 2011, John Hughes, M.D., a physician, opined that Plaintiff was capable of gainful employment with the restrictions "on handwriting, typing, and grasping using the left hand to 30 minutes out of each hour and the right hand 10 minutes out of each hour."  (Tr. 1124-32.)

On September 23, 2011, Plaintiff's attorney memorialized a conversation between him and Dr. Greg Reichardt regarding Plaintiff which Dr. Reichardt signed.  (Tr. 1059-60.)  Dr.

3

Reichardt opined that Plaintiff should not frequently (no more than 30 percent of the time) use her right arm, should perform no more than occasional keyboarding with her right hand, and should not work in cold environments; however, the restrictions state that Plaintiff could use her left arm normally.  (Tr. 1060.)  Further, as a result of Plaintiff's "chronic pain, she has experienced depression, sleep difficulties and social withdrawal."  (Tr. 1060.)

In November 2011, Alan Lichtenberg, M.D., a physician, opined that Plaintiff was permanently and totally disabled due to chronic pain, psychological symptoms, and a sleep disorder.  (Tr. 1100-15.)

In July 2012, Plaintiff received a pain block injection.  (Tr. 1142-43.)

2.   Mental Impairments

In November 2010, Plaintiff saw Doreen Hill, a mental health therapist, with complaints of depression-related symptoms.  (Tr. 1062-68.)  Ms. Hill recommended therapeutic mind-body exercises and therapy.  (Tr. 1062-68.)

In November 2010, Plaintiff attended a state-ordered psychological evaluation with Russell Thye, Ph.D., a psychologist.  (Tr. 974-78.)  Dr. Thye opined that Plaintiff would benefit from therapy and medication management and would likely realize a reduction in symptoms; he diagnosed Plaintiff with major depressive disorder with some possible cognitive decrease related to depression and pain; he assigned Plaintiff a GAF score of 48.  (Tr. 977-78.)  Dr. Thye opined that Plaintiff's ability to complete simple tasks and basic work duties was likely moderately impaired and her ability to do more complex tasks was likely markedly impaired.  (Tr. 978.)

In December 2010, state-agency consultant Ellen Ryan, M.D. opined that Plaintiff retained the ability to perform work not involving significant complexity or judgment; could do

work requiring up to three months' time to learn; and was capable of lower semi-skilled work. (Tr. 95-97.)

In February 2011, Dr. Pock, opined that without treatment, Plaintiff's symptoms were unlikely to improve and that in her current emotional condition it was unlikely she would be able to work. (Tr. 1000-04.)

In March 2011, David Zierk, Psy.D., a psychologist, diagnosed Plaintiff with a GAF score of 50-55 and opined that Plaintiff was currently capable of only sub-sedentary work. (Tr. 1014-30.)

In April 2011, Plaintiff saw Stephen Moe, M.D., a psychiatrist, for evaluation of and treatment for depression. (Tr. 1037-42.) Dr. Moe noted that Plaintiff's behavior and actions did not comport with depression. (Tr. 1040.) Dr. Moe opined that Plaintiff's complaints had a "factitious feeling." (Tr. 1040-41.)

In June 2011, Plaintiff saw Elias Ruiloba, M.D. a psychiatrist, for medication management and treatment of depression. (Tr. 1070-74.) Plaintiff reported that she had adverse reactions to antidepressant medication. (Tr. 1070-74.) Dr. Ruiloba diagnosed Plaintiff with a mood disorder related to her general medical condition and assigned her a global assessment of function ("GAF") score of 53. (Tr. 1071, 1073.)

In July 2011, Plaintiff saw Dr. Moe for a follow-up treatment visit. (Tr. 1084-87.) Plaintiff brought Randolph Pock, M.D., a psychiatrist (Tr. 1000-04), to the visit. (Tr. 1084.) Dr. Moe noted that Plaintiff was superficially tearful and vaguely hostile/passive-aggressive. (Tr. 1085.) Dr. Moe opined that he could not say whether Plaintiff had a major depressive disorder or had developed symptoms as a result of somatization and/or factitious disorder. (Tr. 1085-86.)

5

Between August 2011 and November 2011, Plaintiff saw Dr. Ruiloba for three follow-up visits.  (Tr. 1075-79.)  Plaintiff reported that the medications prescribed by Dr. Ruiloba caused her adverse reactions.  (Tr. 1075-79.)  Dr. Ruiloba assigned Plaintiff GAF scores of 52 to 54.  (Tr. 1075, 1077-78.)

 In December 2011, Dr. Pock opined that Plaintiff did not have the emotional capacity to work and concluded she was permanently and totally disabled.  (Tr. 1118-23.)

### B.    The ALJ's Decision

On August 21, 2012, ALJ Charlotte A. Wright issued her decision in this matter denying Plaintiff DIB.  (Tr. 8-30.)  In reaching her decision, ALJ Wright followed the five-step sequential evaluation process for evaluating disability claims.  (Tr. 13-22.)  ALJ Wright found that Plaintiff has met the disability insured status of the Act through March 31, 2013 and has not engaged in substantial gainful activity since May 21, 2007, the alleged onset date.  (Tr. 13.)  ALJ Wright found that Plaintiff has the following severe impairments:  complex regional pain syndrome ("CRPS") right arm, status post first dorsal extensor compartment release right wrist, status post right upper extremity cubital tunnel release, major depressive disorder.  (Tr. 13-14.)  ALJ Wright found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in Appendix 1 of the Social Security Regulations, specifically considering Listing 12.04.  (Tr. 14-15.)  ALJ Wright found Plaintiff's residual functional capacity ("RFC") to be as follows:  "to perform light work as defined in 20 CFR 404.1567(b) except pushing and pulling is limited to occasional on the right side; the claimant cannot perform tasks requiring repetitive use of the right arm; the claimant is limited to occasional overhead reaching on the right; occasional in front and/or lateral reaching on the right; occasional handling and fingering on the right; the claimant can occasionally climb ramps

and stairs; never climb ladders, ropes or scaffolds; frequently stoop or kneel; occasionally crouch or crawl; the claimant retains the mental ability to do work not involving significant complexity or judgment; the claimant can do work requiring up to three months['] time to learn techniques, acquire information and develop the facility needed for average job performance; and the claimant is capable of lower semi-skilled (SVP3) work." (Tr. 15-21.) ALJ Wright found that Plaintiff has past relevant work and that she is unable to perform such work. (Tr. 21.)

Based on the vocational expert's testimony, which in turn was predicated on ALJ Wright's hypotheticals and in consideration of Plaintiff's age, education, and work experience, ALJ Wright found that Plaintiff could perform jobs that exist in significant numbers in the national economy, including: counter clerk and gate guard. (Tr. 21-22.)

Therefore, ALJ Wright concluded that Plaintiff was not disabled. (Tr. 22.)

### C.      Procedural History

Plaintiff appealed the ALJ's decision at issue in this matter. (Tr. 39.) On November 6, 2013, the Appeals Council denied Plaintiff's request for review. (Tr. 1-7.) Plaintiff appeals that decision by bringing this lawsuit. (ECF No. 1.)

## II.      LEGAL STANDARDS[2]

### A.      Standard of Review

The Court reviews the Commissioner's decision to determine whether substantial evidence in the record as a whole supports the factual findings and whether the correct legal standards were applied. *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009). Substantial evidence is evidence that a reasonable mind might accept as adequate to support a conclusion.

---

[2] C.F.R. citations are to part 404—which addresses DIB claims.

7

*Id.*  "It requires more than a scintilla, but less than preponderance."  *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

Although a district court will "not reweigh the evidence or retry the case," it "meticulously examine[s] the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met."  *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007); *see also* 42 U.S.C. § 405(g).  Evidence is not substantial if it is overwhelmed by other evidence in the record.  *Grogan v. Barnhart*, 399 F.3d 1257, 1261-62 (10th Cir. 2005).  In reviewing the Commissioner's decision, the Court may not substitute its judgment for that of the agency.  *Salazar v. Barnhart*, 468 F.3d 615, 621 (10th Cir. 2006).  As the Tenth Circuit Court of Appeals observed in *Baca v. Dep't of Health & Human Servs.*, 5 F.3d 476 (10th Cir. 1993), the ALJ also has a basic duty of inquiry to "fully and fairly develop the record as to material issues."  *Id.* at 479-480 (citations omitted).  This duty exists even when the claimant is represented by counsel.  *Id.* at 480 (citation omitted).

Also, "[t]he failure to apply the correct legal standard or to provide [a reviewing] court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal."  *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (citation and internal quotation marks omitted); *see also Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996) ("[T]he Secretary's failure to apply the correct legal standards, or to show us that [he] has done so, are . . . grounds for reversal.").

### B.    Evaluation of Disability

The criteria to obtain DIB under Title II of the Act are that a claimant meets the insured status requirements, is younger than 65 years of age, files an application for a period of disability, and is under a "disability" as defined under Title II of the Act.  42 U.S.C. §§ 416(i)

8

and 423(a); *Flint v. Sullivan*, 951 F.2d 264, 267 (10th Cir. 1991).  In addition, the individual's disability must have begun before his or her disability-insured status has expired.  20 C.F.R. § 404.101; Social Security Ruling ("SSR") 83-10, 1983 WL 31251, at *8 (1983).

The Act defines an individual as disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work."  42 U.S.C. § 423(d)(2)(A); *Barnhart v. Walton*, 535 U.S. 212, 214-15 (2002).

There is a five-step sequence for evaluating a disability.  *See* 20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987) (describing five-step analysis).  If it is determined that a claimant is or is not disabled at any point in the analysis, the analysis ends. *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991) (citation omitted). First, the claimant must demonstrate that he or she is not currently involved in any substantial, gainful activity.  20 C.F.R. § 404.1520(b).  Second, the claimant must show a medically severe impairment or combination of impairments that significantly limits his or her physical or mental ability to do basic work activities.  *Id*. at § 404.1520(c).  Third, if the impairment matches or is equivalent to an established listing under the governing regulations, the claimant is judged conclusively disabled.  *Id*. at § 404.1520(d).  If the claimant's impairment does not match or is not equivalent to an established listing, the analysis proceeds to fourth step.  *Id*. at § 404.1520(e). Fourth, the claimant must show that the "impairment prevents [him or her] from performing work [he or she] has performed in the past."  *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir.

1988) (citations omitted); *accord* 20 C.F.R. § 404.1520(f).  If the claimant is able to perform his or her previous work, he or she is not disabled.  20 C.F.R. § 404.1520(f).  Fifth, the Commissioner must demonstrate:  (1) that based on the claimant's residual functional capacity ("RFC"), age, education, and work experience, the claimant can perform other work; and (2) the work that the claimant can perform is available in significant numbers in the national economy. *Frey v. Bowen*, 816 F.2d 508, 512 (10th Cir. 1987) (citation omitted); *see also* 20 C.F.R. § 404.1520(g).

## III.    ANALYSIS

Plaintiff raises numerous issues for the Court's consideration, including that:  (1) the ALJ erred by failing "to address or give controlling weight to attending physician evidence" (ECF No. 15 at 3-6); (2) the ALJ erred by relying on Plaintiff's failure to take pain medication or seek medical treatment (ECF No. 15 at 6-9); (3) the ALJ erred by failing to consider Plaintiff's pain (ECF No. 15 at 9-10); (4) the ALJ erred in her residual function determination (ECF No. 15 at 11-15); (5) the ALJ erred in her assessment of the medical providers (ECF No. 15 at 15-18); the ALJ erred by substituting her medical judgment for that of medical sources (ECF No. 15 at 18-19).

Because the Court finds the ALJ committed legal error due to her failure to state and adequately discuss the weight afforded to certain medical providers, the Court VACATES Defendant's decision.

Because this error alone requires remand, the Court does not address the other arguments raised by Plaintiff.  *See Madrid v. Barnhart*, 447 F.3d 788, 792 (10th Cir. 2006) (when the ALJ's error affected the analysis as a whole, the court declined to address other issues raised on appeal); *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003) ("We will not reach the

remaining issues raised by appellant because they may be affected by the ALJ's treatment of this case on remand.").  The Court expresses no opinion as to Plaintiff's other arguments and neither party should take the Court's silence as tacit approval or disapproval of how the evidence was considered.  The Court does not intend, by the opinion, to suggest the result that should be reached on remand; rather, the Court encourages the parties (as well as the ALJ) to consider all of the evidence and the issues anew.

### A.   The ALJ Committed Reversible Error by Not Stating How Much Weight She Gave to Certain Medical Providers' Opinions and in Failing to Discuss Adequately those Opinions.

The ALJ is required to weigh every relevant medical opinion he or she receives.  *See* 20 C.F.R. §§ 404.1527(c)-(d); *Watkins*, 350 F.3d at 1301 (citation omitted); *see* SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996) (providing that an ALJ must explain why a medical opinion was not adopted).  "It is the ALJ's duty to give consideration to all the medical opinions in the record."  *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012) (citing 20 C.F.R. §§ 404.1527(c), 927(c)); *see also Lauxman v. Astrue*, 321 F. App'x 766, 769 (10th Cir. 2009) (unpublished) (holding that "an ALJ must consider the opinion of every medical source and provide specific, legitimate reasons for rejecting it."); *Doyal v. Barnhart*, 331 F.3d 758, 764 (10th Cir. 2003); SSR 96-5p, 1996 WL 374183, at * 1 ("opinions from any medical source about issues reserved to the Commissioner must never be ignored")).  The ALJ "must also discuss the weight [s]he assigns to such opinions."  *Keyes-Zachary*, 695 F.3d at 1161 (citing 20 C.F.R. §§ 404.1527(e)(2)(ii)).  "[W]hen deciding what weight to assign to an opinion, an ALJ must consider the factors set forth at 20 C.F.R. []§ 404.1527(d). . . ."  *Lauxman*, 321 F. App'x at 769; *see also Wade v. Astrue*, 268 F. App'x. 704, 706 (10th Cir. Jan. 23, 2008) (unpublished).  "The opinion of an examining physician or psychologist is generally entitled to less weight than that of

11

a treating physician or psychologist, and the opinion of an agency physician or psychologist who

has never seen the claimant is generally entitled to the least weight of all." *Robinson v.*

*Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004).

Medical opinions are defined as "'statements from physicians and psychologists or other

acceptable medical sources that reflect judgments about the nature and severity of [a claimant's]

impairment(s), including [a claimant's] symptoms, diagnosis and prognosis, what [a claimant]

can still do despite impairment(s), and [a claimant's] physical or mental restrictions.'" *Fuller v.*

*Astrue*, 766 F. Supp. 2d 1149, 1156 (D. Kan. 2011) (citing 20 C.F.R. § 404.1527(a)(2)).  Medical

opinions may not be ignored and all medical opinions must be evaluated by Defendant in

accordance with factors contained in the regulations.  *Id.* (citing 20 C.F.R. § 404.1527(d); SSR

96-5p, 1996 WL 374183, at *2-3 (July 2, 1996)).  Those factors are: (1) length of treatment

relationship and frequency of examination; (2) the nature and extent of the treatment

relationship, including the treatment provided and the kind of examination or testing performed;

(3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency

between the opinion and the record as a whole; (5) whether or not the physician is a specialist in

the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention

which tend to support or contradict the opinion.  *Watkins*, 350 F.3d at 1301 (citation omitted); 20

C.F.R. §§ 404.1527(d)(2-6).  As to non-treating physicians, the ALJ is still required to consider

their opinions and to provide, specific, legitimate reasons for rejecting it.  *Doyal*, 331 F.3d at

764; SSR 96-5p, 1996 WL 374183, at *1.  Although the ALJ need not discuss each factor, *see*

*Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2008), she "must be 'sufficiently specific' to

permit meaningful" review.  *Guilano v. Colvin*, 577 F. App'x 859, 861-62 (10th Cir. 2014)

(unpublished) (citation omitted).  The ALJ may not reject certain medical opinions on the

12

presumption that those providers were "paid for the report" (Tr. 19) or obtained at the request of Plaintiff's attorney. *See Crowder v. Colvin*, 561 F. App'x, 740, 743 (10th Cir. 2014) (unpublished) (citation omitted).

In this matter, the ALJ did not give controlling weight to a treating source's opinion. (*See generally* Tr. 11-22.) The ALJ did not state how much weight she gave to the respective opinions of Drs. Pock, Healey, Zierk, Hughes, and Lichtenberg. (*See generally* Tr. 11-22.) Rather, the ALJ merely stated that "such evidence is certainly legitimate and deserves due consideration." (Tr. 19.) Such analysis is insufficient as the Court is unable to discern what the ALJ means by "due consideration." 20 C.F.R. § 404.1527(e)(2)(ii) ("[T]he administrative law judge must explain in the decision the weight given to the opinions . . . of any treating, non-treating and non-examining sources. . . ."); *see Keyes-Zachary*, 695 F.3d at 1161 (citation omitted); *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996) (holding "[i]n the absence of ALJ findings supported by specific weighing of the evidence, we cannot assess whether relevant evidence adequately supports the ALJ's conclusion"); *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (holding ALJ's listing of factors he considered was inadequate when the court was "left to speculate what specific evidence led the ALJ to [his conclusion]"). Further, although the ALJ is correct in her assessment that some of the opinions identified above state that Plaintiff "is disabled" and that the "ultimate determination as to disability is a question reserved to the Commissioner" (Tr. 19 (citing SSR 96-5p, 1996 WL 374183, at *2 (July 2, 1996)), that does not mean that the ALJ may ignore other aspects to the medical providers' opinions. *Fuller*, 766 F. Supp. 2d at 1161 (citing SSR 96-5p, 1996 WL 374183, at *2-3). The ALJ errs when she does not weigh all the medical opinions even though they may touch upon issues reserved solely to the Commissioner.

13

"Although the ALJ need not discuss all of the evidence in the record, [s]he may not ignore evidence that does not support [her] decision, especially when that evidence is 'significantly probative.'" *Briggs v. Massanari*, 248 F.3d 1235, 1239 (10th Cir. 2001) (quoting *Clifton,* 79 F.3d at 1009-10). In this matter, the ALJ summarized the evidence from Drs. Pock, Healey, Zierk, Hughes, and Lichtenberg. (Tr. 19.) The ALJ, however, failed to discuss how she resolved conflicts in the evidence as contained within the opinions of Drs. Pock, Healey, Hughes, and Lichtenberg in comparison to the opinions offered by Drs. Reichardt, Ryan, LoGalbo, and Thye. Defendant argues that the "ALJ permissibly addressed the examiners' opinions collectively." (ECF No. 16 at 13 n.13 (citing *Oldham v. Astrue*, 509 F.3d 1254, 1258-59).) In *Oldham*, in contrast to this matter, the ALJ explicitly gave "very little weight" to the grouped opinions. *Oldham*, 509 F.3d at 1258-59. Further, Defendant argues that "[i]t was not unreasonable for the ALJ to give greater credence" to the treating sources' findings and opinions as well as state agency expert opinions based upon them. (ECF No. 16 at 14.) Nowhere, however, does the ALJ state that she gave greater weight to these individuals' opinions than to the opinions of Drs. Pock, Healey, Hughes, and Lichtenberg. (*See generally* Tr. 11-22.) The ALJ's decision must be evaluated "based solely on the reasons given stated in the decision." *Robinson*, 366 F.3d at 1084. "'Affirming this post hoc effort to salvage the ALJ's decision would require us to overstep our institutional role and usurp essential functions committed in the first instance to the administrative process.'" *Id*. at 1084-85 (quoting *Allen v. Barnhart*, 357 F.3d 1140, 1142 (10th Cir. 2004); *see also Carpenter v. Astrue*, 537 F.3d 1264, 1267 (10th Cir. 2008) (holding that a post hoc rationale is improper because it usurps the agency's function of weighing and balancing the evidence in the first instance and that judicial review is limited to the reasons stated in the ALJ's decision).

14

As such, the ALJ's failure to state the weight afforded to and to adequately discuss the opinions of Drs. Pock, Healey, Zierk, Hughes, and Lictenberg constitutes legal error.

**B.      The ALJ's Error Is Not Harmless**

Harmless error analysis is applicable if "no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way." *Fischer-Ross v. Barnhart*, 431 F.3d 729, 733-34 (10th Cir. 2005).  This analysis is applied cautiously in the administrative context.  *Id*. at 733.  Where the court "can follow the adjudicator's reasoning in conducting [its] review, and can determine that correct legal standards have been applied, merely technical omissions in the ALJ's reasoning do not dictate reversal." *Keyes-Zachary*, 695 F.3d at 1166.  In this matter, Defendant does not advocate that the Court apply harmless error analysis.  Further, the Court does not find the harmless error analysis applicable in this matter.

The Tenth Circuit has previously held that

> if the ALJ's RFC is 'generally consistent' with the findings in a medical opinion, or if the RFC is "more favorable" to the claimant than the opinion's findings, then there is no reason to believe that a further analysis or weight of the opinion could advance the claimant's claim of disability.  In such a case, the error is harmless because the claimant cannot show prejudice stemming from the ALJ's failure to give greater weight to the opinion.

*Thompson v. Colvin*, 551 F. App'x 944, 948 (10th Cir. 2014) (unpublished) (internal alterations omitted and citation omitted).    In this matter, the ALJ's RFC determination (Tr. 15-16) is not more favorable to Plaintiff than the opinions of Drs. Pock, Healey, Zierk, Hughes, and Lictenberg.  Nor does the Court find the ALJ's RFC determination (Tr. 15-16) consistent with the opinions of Drs. Pock, Healey, Zierk, Hughes, and Lictenberg.

Thus, the ALJ's failure to state the weight afforded to the opinions of Drs. Pock, Healey, Zierk, Hughes, and Lictenberg is not harmless error.

## IV.   CONCLUSION

Based on the foregoing, the Court:

(1)    VACATES Defendant's denial of disability insurance benefits; and

(2)    REMANDS to Defendant for further proceedings as directed in this Order pursuant to sentence four in 42 U.S.C. § 405(g).

DATED this 3rd day of February, 2016.

BY THE COURT:

_____
RAYMOND P. MOORE
United States District Judge

16